IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-32

No. 113A21

Filed 18 March 2022

IN THE MATTER OF: A.N.D., A.N.D., and A.C.D.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 16 December 2020 by Judge V.A. Davidian III in District Court, Wake County. This matter was calendared for argument in the Supreme Court on 22 December 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mary Boyce Wells for petitioner-appellee Wake County Human Services.*

*Michelle FormyDuval Lynch for appellee Guardian ad Litem.*

*Leslie Rawls for respondent-appellant father.*

BERGER, Justice.

¶ 1 Respondent[1] appeals from the trial court's order terminating his parental rights in A.N.D. (Andrew),[2] born December 2009; A.N.D. (Adam), born February 2011; and A.C.D. (Anna), born July 2016, based on neglect and failure to show reasonable progress in correcting the conditions which led to the removal of the

---

[1] The trial court's order also terminated the parental rights of the minor children's mother, who is not a party to this appeal.

[2] Pseudonyms are used throughout the opinion to protect the identities of the children and for ease of reading.

children from the home. We affirm the trial court's order.

## I. Factual and Procedural Background

On April 29, 2015, Wake County Human Services (DSS) filed a juvenile petition alleging that Andrew, Adam, and "Nigel"[3] were neglected juveniles. The petition alleged that the children witnessed two domestic violence incidents between the children's mother and Nigel's father and the parents had substance abuse issues. Nigel was placed in foster care and Andrew and Adam remained in the care of their maternal grandmother. At that time, respondent was in federal custody and unable to provide care for Andrew and Adam.

In May 2015, the trial court found that respondent was still incarcerated with an expected release date in October 2015, and suspended respondent's visitation with the children. On September 3, 2015, the court adjudicated Andrew and Adam neglected juveniles and granted legal and physical custody to their maternal grandmother.

On September 12, 2017, DSS filed a petition alleging Anna[4] to be a neglected juvenile. The petition alleged that the maternal grandmother was unable to obtain timely medical care for Anna because both parents were incarcerated and could not

---

[3] Nigel, born December 11, 2014, shares the same mother as Andrew, Adam, and Anna but has a different father. Nigel's father is not a party to this appeal.

[4] Anna is respondent's third child. In September 2016, the mother was in a car accident with Anna in the car. Anna was taken to the hospital, and her mother was taken into custody. After this incident, Anna was placed in the care of her maternal grandmother along with Andrew and Adam.

provide consent for treatment. Following a hearing in February 2018, the trial court determined, and respondent agreed, that it was in Anna's best interests for the maternal grandmother to be appointed as Anna's legal custodian. The trial court adjudicated Anna as a neglected juvenile on March 14, 2018, and placed her in the custody of the maternal grandmother along with Andrew and Adam. The trial court suspended respondent's visitation with Anna and ordered him to enter into a case plan with DSS.

¶ 5 On September 12, 2018, the trial court entered an order granting DSS nonsecure custody of all three children following the filing of a DSS petition alleging that Andrew, Adam, and Anna were abused, neglected, and dependent juveniles. The petition included allegations that the maternal grandmother had been arrested for driving while impaired and child abuse, among other allegations. This was the second time that the maternal grandmother had been charged with driving while impaired and child abuse within a six-month period. At that time, the children could not be placed with respondent, as he was residing in a "rooming house" that was not appropriate for children, and he could not provide for their care.

¶ 6 The trial court entered a consent order on adjudication and disposition on November 20, 2018. At the time of the hearing on adjudication and disposition, respondent was incarcerated in the Wake County Detention Center following his arrest for assault with a deadly weapon inflicting serious injury. DSS placed the

children in foster care, and the trial court suspended respondent's visitation.

¶ 7    On October 11, 2019, DSS filed a motion to terminate respondent's parental rights in Andrew, Adam, and Anna, alleging that grounds existed for termination based on neglect, willfully leaving the minor children in foster care without showing reasonable progress in correcting the conditions which led to the removal of the children from the home, and failing to pay a reasonable portion of the cost of care for the children for a period of six months while the children remained in foster care.

¶ 8    In an order entered after a February 2020 hearing, the trial court found that respondent did not cooperate with recommended services in his case plan. The primary permanent plan was changed to adoption, with a secondary plan of reunification. In a June 11, 2020 order, the trial court determined that respondent resided in a "structurally sound" residence but that he refused to participate with his case plan and failed to comply with random drug screens. The trial court further found that respondent was not making adequate progress within a reasonable time, and his behavior was "inconsistent with the children's health and safety."

¶ 9    The trial court determined that grounds existed to terminate respondent's parental rights under N.C.G.S. § 7B-1111(a)(1) and (2) and that it was in the children's best interests that respondent's parental rights be terminated.

¶ 10    On appeal, respondent does not challenge the trial court's grounds for termination. Instead, respondent argues that the trial court abused its discretion in

concluding that it was in Andrew's, Adam's, and Anna's best interests to terminate respondent's parental rights. Specifically, respondent argues that finding of fact 39 "misrepresents and mischaracterizes" his criminal history and the trial court failed to consider the impact of the coronavirus pandemic and options short of termination of his parental rights in its analysis.

## II. Analysis

Our Juvenile Code provides a two-stage process for terminating parental rights: an adjudication stage and a dispositional stage. *See* N.C.G.S. §§ 7B-1109, -1110 (2021). At the adjudication stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1109(e), (f). If one or more grounds exist for termination of parental rights, the court proceeds to the dispositional stage. N.C.G.S. § 7B-1110(a). At the dispositional stage, the trial court must "determine whether terminating the parent's rights is in the juvenile's best interest" based on the following criteria:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other

permanent placement.

(6) Any relevant consideration.

*Id.*

This Court reviews "the trial court's dispositional findings of fact to determine whether they are supported by competent evidence." *In re E.S.*, 378 N.C. 8, 2021-NCSC-72, ¶ 11 (quoting *In re J.J.B.*, 374 N.C. 787, 793, 845 S.E.2d 1, 5 (2020)).[5] If supported by competent evidence, the trial court's findings are binding on appeal. *In re A.M.O.*, 375 N.C. 717, 720, 850 S.E.2d 884, 887 (2020). "[A]ssessment of a juvenile's best interest . . . is reviewed only for abuse of discretion." *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 423 (2019). A trial court's determination in a termination-of-parental-rights case "will remain undisturbed . . . so long as that determination is not 'manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *In re A.M.*, 377 N.C. 220, 2021-NCSC-42, ¶ 18 (quoting *In re A.U.D.*, 373 N.C. 3, 6–7, 832 S.E.2d 698, 700–01 (2019)).

Respondent first challenges finding of fact 39 for its inclusion of "duplicate charges, dismissed charges, and charges that resulted in not guilty judgments." In finding of fact 39, the trial court found that respondent

---

[5] Recently, this Court has noted that despite precedent using the term "competent evidence" in describing the applicable standard of review in such an analysis, N.C.G.S. § 7B-906.1(c) instructs that the evidence a trial court may receive and consider need not be limited to that which is "competent." *See Matter of C.C.G.*, 2022-NCSC-3 n. 4.

has an extensive criminal history and has served several extended prison sentences for the following offenses: felony and misdemeanor breaking and entering, interfering with emergency communications, misdemeanor larceny, assault on a female, possession and distribution of cocaine and habitual misdemeanor assault. He was again arrested in mid-2019 and released in November 2019.

¶ 14        Respondent correctly asserts that there is no support in the record for the trial court's finding that he was convicted of breaking and entering and possession of cocaine. However, a certified copy of respondent's criminal history in the record provides competent evidence for the remaining convictions set forth in finding of fact 39. Specifically, competent evidence in the record indicates that respondent was previously convicted of at least one count of (1) interfering with emergency communications; (2) misdemeanor larceny; (3) assault on a female; (4) distribution of cocaine; and (5) habitual misdemeanor assault. Thus, competent evidence supports the characterization of respondent's criminal history included in finding of fact 39.

¶ 15        Respondent next argues that the trial court's decision to terminate his parental rights was "manifestly unsupported by reason" because the trial court failed to consider the impact that coronavirus restrictions had on his housing and employment as a "relevant factor" in its best interest analysis. However, respondent did not have suitable housing before or after the filing of the October 2019 motion to terminate parental rights. Respondent concedes this fact in his brief when he states that "[respondent] was not able to obtain housing that would enable him to have his

children in the home." Respondent further states in his brief that when he was not incarcerated, there was no place in which he resided that "could accommodate the children."

Regarding employment, respondent maintained fairly steady employment during the periods in which he was not incarcerated. While respondent was laid off from employment at a restaurant due to coronavirus restrictions, respondent admitted that his income increased after he was laid off and that he could have worked but chose not to. Although coronavirus restrictions may have impacted respondent's housing and employment situations, respondent acknowledged that he did not have a plan for his family and that it could take up to a year to obtain a suitable residence.

Respondent here has not demonstrated that the trial court's determination that termination of parental rights was in the best interests of the minor children was not the product of a reasoned decision. *See In re A.U.D.*, 373 N.C. at 6–7, 832 S.E.2d at 700–01. The trial court properly considered the relevant statutory factors set forth in N.C.G.S. § 7B-1110(a) before concluding that termination was in the children's best interests. Specifically, the trial court made the following unchallenged findings of fact:

> 54. The children reside together in a licensed foster home in Franklin County, North Carolina. The children have bonded closely with their foster family and the family intends to adopt all four children.

55. The foster family has a good relationship with [respondent] and intend[s] to encourage contact between him and the children.

56. [Andrew] and [Adam], ages 10 and 9, attend Youngsville Elementary School and [are] making some academic progress. They both are diagnosed with Adjustment Disorder and they continue to receive outpatient therapy. Both children wish to remain with the foster parents because they feel safe, secure and supported in the home.

57. [Nigel], age 5, attends daycare at the Learning Experience in Franklin County and does not receive additional services. [Nigel] appears to be developmentally on-target.

58. [Anna], age 4, refers to the foster family as "mommy" and "daddy" and has strongly bonded with the family. . . .

59. There is a high likelihood of adoption for all four children.

60. Adoption is one of the children's concurrent permanency plans, and termination of parental rights is necessary to accomplish this plan.

. . . .

63. While it is clear that the children have a bond with [respondent] and that [respondent] loves his children, that love does not equate to an ability to provide permanence and daily parenting. These children finally have stability in their lives after many years and they are thriving.

¶ 18 These unchallenged findings of fact are binding on appeal and further show that the trial court's decision was not "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision." *In re A.M.*,

377 N.C. 220, 2021-NCSC-42, ¶ 18 (quoting *In re A.U.D.*, 373 N.C. at 6–7, 832 S.E.2d at 698, 700–01). Thus, the trial court did not abuse its discretion when it terminated respondent's parental rights to the minor children.

Finally, respondent argues that the trial court did not consider "options short of termination that would have preserved the family relationship." However, as set forth above, the trial court properly considered the statutory factors in N.C.G.S. § 7B-1110(a) and determined that a permanent plan of care could only be obtained by a "severing of the relationship between the children and [respondent]." Respondent has again failed to show that the trial court abused its discretion by terminating his parental rights. Therefore, we affirm the trial court's order terminating respondent's parental rights.

### III.    Conclusion

The trial court did not abuse its discretion in determining that termination of respondent's parental rights was in the best interests of Andrew, Adam, and Anna, and we affirm the trial court's order.

AFFIRMED.